1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   EDWARD JAMES WILLARD,

11            Petitioner,            No. CIV S-04-0743 FCD DAD P

12      vs.

13   D. L. RUNNELS,            ORDER AND

14            Respondent.            FINDINGS AND RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges that the failure of the California

18   Board of Prison Terms (hereinafter "Board") to find him suitable for parole at hearings on June

19   13, 2002 and July 11, 2003 violated his rights to due process and equal protection and breached

20   the plea agreement he entered into with respect to his offense of conviction.  He also alleges that

21   his Eighth and Fourteenth Amendment rights were violated because the Board disregarded

22   regulations ensuring fair suitability hearings and instead operated under a policy requiring that all

23   murderers be found unsuitable for parole.  Upon careful consideration of the record and the

24   /////

25   /////

26   /////

1

1 applicable law, the undersigned will recommend that petitioner's application for habeas corpus

2 relief be denied.[1]

3 PROCEDURAL BACKGROUND

4        Pursuant to a plea of guilty, petitioner was convicted of both second degree

5 murder and robbery with use of a deadly weapon and is serving a sentence imposed on

6 November 3, 1981 of twenty-one years to life in state prison.  (Pet. at consecutive page 1; Am.

7 Answer, Ex. A.)  Petitioner's minimum eligible parole date (MEPD) was August 8, 1995.  (Am.

8 Answer, Ex. E at 5.)  He had his first parole suitability hearing on June 16, 1994, with

9 subsequent hearings on September 14, 1995, September 4, 1997, and June 1, 2000.  (See Am.

10 Pet. filed in Willard v. Butler, Case No. CIV S-02-0705 DFL DAD P, first Ex. B. & Ex. G.)

11 Petitioner has not been found suitable for parole at any suitability hearing.  On June 13, 2002 and

12 July 11, 2003, petitioner appeared before a Board panel for his fifth and sixth parole suitability

13 hearings and was found unsuitable for parole.  (Am. Answer, Exs. B1 and B2.)[2]

14        Petitioner challenged the Board's 2002 and 2003 decisions in a petition for writ of

15 habeas corpus filed in the Los Angeles County Superior Court.  (Am. Answer, Ex. C at 00018.)

16 By order dated November 14, 2003, the Superior Court denied the petition, reasoning as follows:

17
18
19
20
21
> The Court has read and considered the Petition for a Writ of
> Habeas Corpus filed September 8, 2003.  By the petition, petitioner
> challenges the refusal of the Board of Prison Terms to set a parole
> date.  However, the Board of Prison Terms has broad discretion in
> determining whether to grant parole (In re Rosenkrantz 29 C(4)
> 616, 656; In re Powell 45 C(3) 894, 904).  Due process requires
> only that there be "some evidence" to support the decision by the
> Board to deny parole (Rosenkrantz, supra, p. 658).

22 /////

---

23
24 [1] Petitioner has also filed four requests for judicial notice.  The requests for judicial notice will be granted.

25
26 [2] Subsequently, petitioner had three more parole suitability hearings, on October 21, 2004, November 2, 2006, and December 9, 2007.  (Docket No. 32.)  Petitioner was found unsuitable for parole after each of these hearings.  (Id.)

1    In petitioner's case, the Board based its decision to deny parole substantially on the nature of the commitment offense.  (Exhibit E, p. 37.)

2

3    It finds support for this decision in Penal Code section 3014(a) which provides that the Board "shall set a release date unless it determines that the gravity of the current offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." (<u>Rosenkrantz</u>, <u>supra</u>, p. 653.)  In this case, it would be hard to say the life offense was not carried out in an especially brutal, vicious manner.  And, under <u>Rosenkrantz</u>, <u>supra</u>, pp. 682-683, the nature of the prisoner's offense, alone can constitute sufficient basis for denying parole.

Petitioner's claim of a no parole policy in California for lifers, is without merit.  (<u>Rosenkrantz</u>, <u>supra</u>, 685.)

The petition is denied.

(<u>Id.</u>)

Petitioner subsequently filed a petition for writ of habeas corpus in the California Court of Appeal, which was summarily denied by order dated December 19, 2003.  (Am. Answer, Ex. C at 00014.)  On December 29, 2003, petitioner filed a petition for review in the California Supreme Court.  (Am. Answer, Ex. C at 00001.)  That petition was summarily denied by order dated March 17, 2004.  (Am. Answer, Ex. D.)

ANALYSIS

I.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues <u>de novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

1    This action is governed by the Antiterrorism and Effective Death Penalty Act of

2    1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

3    1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

4    habeas corpus relief:

5          An application for a writ of habeas corpus on behalf of a
    person in custody pursuant to the judgment of a State court shall

6        not be granted with respect to any claim that was adjudicated on
    the merits in State court proceedings unless the adjudication of the

7        claim -

8          (1) resulted in a decision that was contrary to, or involved
    an unreasonable application of, clearly established Federal law, as

9        determined by the Supreme Court of the United States; or

10         (2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the

11       State court proceeding.

12   28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

13   Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

14   The court looks to the last reasoned state court decision as the basis for the state

15   court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

16   court reaches a decision on the merits but provides no reasoning to support its conclusion, a

17   federal habeas court independently reviews the record to determine whether habeas corpus relief

18   is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

19   Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

20   reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

21   AEDPA's deferential standard does not apply and a federal habeas court must review the claim

22   de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

23   1167 (9th Cir. 2002).

24   /////

25   /////

26   /////

4

II.  Petitioner's Claims

    A.  Due Process

        Petitioner claims that the failure of the BPT to find him suitable for parole at the parole suitability hearings held on June 13, 2002 and July 11, 2003 deprived him of his liberty without due process of law.

        The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A person alleging due process violations must first demonstrate that he or she was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

        A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion, 306 F.3d at 901 (quoting Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners who have not already been granted a parole date.  Hayward v. Marshall, 512 F.3d 536, 542 (9th Cir. 2008); Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903.  Accordingly, this court must examine whether the deprivation of petitioner's liberty interest in this case lacked adequate procedural protections and therefore violated due process.

Because "parole-related decisions are not part of the criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated." Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving parole issues).  Violation of state mandated procedures will constitute a due process violation only if the violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

In California, the setting of a parole date for a state prisoner is conditioned on a finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The requirements of due process in the parole suitability setting are satisfied "if some evidence supports the decision."  McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S. 445, 456 (1985)); Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992)).  For purposes of AEDPA, Hill's "some evidence" standard is "clearly established" federal law.  Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at 456).  "The 'some evidence' standard is minimally stringent," and a decision will be upheld if there is any evidence in the record that could support the conclusion reached by the factfinder.  Powell, 33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's decision must have some indicia of reliability."  Jancsek, 833 F.2d at 1390.  See also Perveler, 974 F.2d at 1134.  Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence.  Toussaint, 801 F.2d at 1105.  The question is whether there is any reliable evidence in the record that could support the conclusion reached.  Id.

1    In recent years the Ninth Circuit Court of Appeals has been called upon to address

2  the issues raised by petitions such as that now pending before the court here in four significant

3  cases, each of which will be discussed below.  First, in <u>Biggs</u>, the Ninth Circuit Court of Appeals

4  recognized that a continued reliance on an unchanging factor such as the circumstances of the

5  offense could at some point result in a due process violation.  That holding has been

6  acknowledged as representing the law of the circuit.  <u>Irons v. Carey</u>, 505 F.3d 846, 853 (9th Cir.

7  2007); <u>Sass</u>, 461 F.3d at 1129.  While the court in <u>Biggs</u> rejected several of the reasons given by

8  the Board for finding the petitioner unsuitable for parole, it upheld three:  (1) petitioner's

9  commitment offense involved the murder of a witness; (2) the murder was carried out in a

10  manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner

11  could benefit from therapy.  <u>Biggs</u>, 334 F.3d at 913.  However, the court in <u>Biggs</u> cautioned that

12  continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct

13  prior to committing that offense in denying parole could, at some point, violate due process.  In

14  this regard, the court observed:

15    As in the present instance, the parole board's sole supportable
      reliance on the gravity of the offense and conduct prior to
16    imprisonment to justify denial of parole can be initially justified as
      fulfilling the requirements set forth by state law.  Over time,
17    however, should Biggs continue to demonstrate exemplary
      behavior and evidence of rehabilitation, denying him a parole date
18    simply because of the nature of his offense would raise serious
      questions involving his liberty interest in parole.
19

20  <u>Id.</u> at 916.  The court also stated that "[a] continued reliance in the future on an unchanging

21  factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the

22  rehabilitative goals espoused by the prison system and could result in a due process violation."

23  <u>Id.</u> at 917.

24    In <u>Sass</u>, the Board found the petitioner unsuitable for parole at his third suitability

25  hearing based on the gravity of his offenses of conviction in combination with his prior offenses.

26  461 F.3d at 1126.  Citing <u>Biggs</u>, the petitioner in <u>Sass</u> contended that reliance on these

1  unchanging factors violated due process.  The court disagreed, concluding that these factors

2  amounted to "some evidence" to support the Board's determination.  Id. at 1129.  The court

3  provided the following explanation for its holding:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  Biggs, 334 F.3d at 917 (emphasis added).  Under AEDPA it is not our function to speculate about how future parole hearings could proceed.  Cf. id.  The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d).

12  Id.

13         In Irons the Ninth Circuit sought to harmonize the holdings in Biggs and Sass,

14  stating as follows:

> Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in Sass precludes us from accepting Iron's due process argument or otherwise affirming the district court's grant of relief.
>
> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 461 F.3d 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.
>
> Furthermore, we note that in Sass and in the case before us there was substantial evidence in the record demonstrating rehabilitation.

> In both cases, the California Board of Prison Terms appeared to
> give little or no weight to this evidence in reaching its conclusion
> that Sass and Irons presently constituted a danger to society and
> thus were unsuitable for parole. We hope that the Board will come
> to recognize that in some cases, indefinite detention based solely
> on an inmate's commitment offense, regardless of the extent of his
> rehabilitation, will at some point violate due process, given the
> liberty interest in parole that flows from the relevant California
> statutes. Biggs, 334 F.3d at 917.

Irons, 505 F.3d at 664-65.

Finally, and most recently, in Hayward, the Ninth Circuit determined that, under the "unusual circumstances" of that case, the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society. Hayward, 512 F.3d at 546-47. The "unusual circumstances" present in that case were the following: (1) the petitioner had served twenty-seven years in prison on a sentence of fifteen years to life; (2) the petitioner was sixty-four years old; (3) after eleven parole suitability hearings, the Board had twice recommended that the petitioner receive a parole date; (4) former California Governor Gray Davis reversed the Board's second grant of parole based on seven factors, four of which were unsupported by the record and three of which were based on unchanging circumstances; (5) the provocation for petitioner's crime was the attempted rape of the petitioner's girlfriend (and future wife) by the victim; (6) the petitioner had solid parole plans, including several offers of employment and a place to live; and (7) the petitioner had an "exemplary" prison record for most of his period of incarceration, with his last major disciplinary violation in 1989 and a minor disciplinary infraction in 1997. Id. Against this background, the Ninth Circuit explained:

> In light of the extraordinary circumstances of this case – given the
> provocation for Hayward's violent crime in 1978, his incarceration
> for almost thirty years with his positive prison record in recent
> times, and the favorable discretionary decisions of the Board in
> successive hearings, which were reversed by the Governor on
> factual premises most of which were not documented in the record
> – we conclude that the unchanging factor of the gravity of

> Hayward's commitment offense had no predictive value regarding
> his suitability for parole.  In the circumstances of this case, the
> Governor violated Hayward's due process rights by relying on that
> stale and static factor in reversing his parole grant.

Id.

After taking into consideration the Ninth Circuit decisions in Biggs, Sass, Irons, and Hayward, and for the reasons set forth below, this court concludes that petitioner is not entitled to federal habeas relief with respect to his challenge to the 2002 and 2003 Board decisions denying him parole.

### 1.  June 13, 2002 Parole Suitability Hearing

The Board commenced its June 13, 2002 decision finding petitioner unsuitable for parole by stating that the panel had reviewed "all information received from the public" and had concluded that "the prisoner is not suitable for parole and would pose an unreasonable risk or a threat to society or a threat to public safety if released from prison."  (Am. Answer, Ex. B1 at 38.)  The phrases "unreasonable risk of danger to society" and "a threat to public safety" are derived from § 3041(b) of the California Penal Code and § 2281(a) of Title 15 of the California Code of Regulations.  Pursuant to this Penal Code provision,

> [t]he panel or board shall set a release date unless it determines that
> the gravity of the current convicted offense or offenses, or the
> timing and gravity of current or past convicted offense or offenses,
> is such that consideration of the public safety requires a more
> lengthy period of incarceration for this individual, and that a parole
> date, therefore, cannot be fixed at this meeting.

Cal. Penal Code § 3041(b).

The state regulation that governs parole suitability findings for life prisoners states as follows with regard to the statutory requirement of California Penal Code § 3041(b):

"Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

/////

10

society if released from prison." Cal. Code Regs. tit. 15, § 2281(a).  The same regulation

requires the Board to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present
> mental state; past criminal history, including involvement in other
> criminal misconduct which is reliably documented; the base and
> other commitment offenses, including behavior before, during and
> after the crime; past and present attitude toward the crime; any
> conditions of treatment or control, including the use of special
> conditions under which the prisoner may safely be released to the
> community; and any other information which bears on the
> prisoner's suitability for release.

Cal. Code Regs. tit. 15, § 2281(b).

The regulation identifies circumstances that tend to show suitability or

unsuitability for release.  Id., § 2281(c) & (d).  The following circumstances tend to show that a

prisoner is suitable for release:  the prisoner has no juvenile record of assaulting others or

committing crimes with a potential of personal harm to victims; the prisoner has experienced

reasonably stable relationships with others; the prisoner has performed acts that tend to indicate

the presence of remorse or has given indications that he understands the nature and magnitude of

his offense; the prisoner committed his crime as the result of significant stress in his life; the

prisoner's criminal behavior resulted from having been victimized by battered women syndrome;

the prisoner lacks a significant history of violent crime; the prisoner's present age reduces the

probability of recidivism; the prisoner has made realistic plans for release or has developed

marketable skills that can be put to use upon release; institutional activities indicate an enhanced

ability to function within the law upon release.  Id., § 2281(d).

The following circumstances tend to indicate unsuitability for release: the prisoner

committed the offense in an especially heinous, atrocious, or cruel manner; the prisoner had a

previous record of violence; the prisoner has an unstable social history; the prisoner's crime was

a sadistic sexual offense; the prisoner had a lengthy history of severe mental problems related to

the offense; the prisoner has engaged in serious misconduct in prison.  Id., § 2281(c).  Factors to

consider in deciding whether the prisoner's offense was committed in an especially heinous,

atrocious, or cruel manner include: multiple victims were attacked, injured, or killed in the same

or separate incidents; the offense was carried out in a dispassionate and calculated manner, such

as an execution-style murder; the victim was abused, defiled or mutilated during or after the

offense; the offense was carried out in a manner that demonstrated an exceptionally callous

disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation

to the offense.  Cal. Code Regs., tit. 15, § 2281(c)(1)(A) - (E).  Under current California law, the

Board is apparently not required to refer to sentencing matrixes or compare the prisoner's crime

to other crimes of the same type in deciding whether the crime was especially cruel or

exceptionally callous but may find the crime especially cruel or exceptionally callous if there was

violence or viciousness beyond what was "minimally necessary" for a conviction.  In re

Dannenberg, 34 Cal. 4th 1061, 1095 (2005).

In addressing the factors it considered in reaching its decision in 2002 that

petitioner was unsuitable for parole, the Board stated as follows:

PRESIDING COMMISSIONER WELCH:

Okay.  The Panel reviewed all information received from the
public and relied on the following circumstances in concluding that
the prisoner is not suitable for parole and would pose an
unreasonable risk or a threat to society or a threat to public safety if
released from prison.  The offense was carried out in an especially
cruel and callous manner.  The offense was carried out in a
dispassionate manner.  The offense was carried out in a manner
which demonstrates an exceptionally callous disregard for human
suffering.  The motive for the crime was inexplicable or very trivial
in relationship to the offense.  These conclusions was (sic) drawn
from the Statement of Facts wherein on 10/16/79 John B.
Koningas, Koningas, I believe, K-O-N-I-N-A-G-A-S, was found
lying on the concrete pillar in Venice, California, and he was
deceased.  The circumstances surrounding the offense is that he
had been stabbed numerous times, ten times.  Five of these stab
wounds was (sic) life threatening.  The police did an investigation.
They contacted an informant and the informant worked with the
police in getting a confession from the prisoner where he confessed
to killing the victim.  It should be noted that the victim was a guest
in this country.  He was from – He was from Holland.  He was
Dutch.  And he was traveling in this country on vacation.  He came
over here and he had Dutch currency on him.  He changed some of
it of (sic) into American currency, United States currency, and

beginning on his pilgrimage across this country, used a Greyhound Bus.  He was befriended by the prisoner and he met an untimely death in Venice, California.  The prisoner did have an escalating pattern of criminal conduct.  It should be noted that the prisoner is a Canadian citizen and fortunately we were able to get part of his criminal history from Canada.  And the prisoner did have an escalating pattern of criminal conduct.  He had failed previous grants of probation.  And it appears that he could not be counted upon to avoid criminality.  He failed to profit from Canadian's (sic) system of justice.  He failed to profit from adult probation.  He failed to profit from what would be I consider a criminal – county jail in Canada.  He even refused to appear – he failed to appear for a timely court summons in Canada.  Under prior and stable social history, we cannot document his social history, his prior social history, whether it was stable or not.  It appears that he may have had a stable social history, but is unable to complete a (inaudible) because is from Canada.  However, under prior criminality the prisoner has such crimes as breaking and entering, failure to report to a police station as ordered, failure to comply with condition of undertaking theft of over $200, a violation of the Narcotics Control Act in Canada, criminal negligence, failure to appear, and of course in this country the instant offense of murder and robbery.  The recent psychiatric report by Dr. Melvin Macomber was an updated report.  He updated the one that was in 1999 and 2/19/02.  It's a positive report.  He says some positive things about the prisoner.  The prisoner does not have realistic parole plans.  He does not have viable residential plans and he does not have acceptable employment plans at this time.  The Panel notes that in response to Penal Code 3042 Notice indicate an opposition to a finding of suitability, specifically the Deputy District Attorney from Los Angeles spoke in opposition of a finding of suitability at this time.

* * *

The Panel makes the following findings:  The prisoner needs to continue to develop the ability to face, discuss, understand and cope with stress in a nondestructive manner.  Until significant progress is made the prisoner continues to be unpredictable and a threat to others.  Nevertheless, there are things that we want to commend the prisoner for.  He's started a disciplinary streak, a disciplinary-free streak.  He have (sic) not had a disciplinary since 9/17/1995.  And we do recognize that you're starting on a disciplinary-free streak, and we commend you for that.  Your gains are recent.  You must demonstrate your ability to maintain those over an extended period of time.  But we certainly want to recommend you for that.  We want to recommend you for – We want to commend you that is for the work reports, your work that you've been involved in.  However, these positive aspects of your behavior does not outweigh the factors of unsuitability.  Parole will be denied for one year.  We recommend that you remain disciplinary-free and you continue to participate in self-help

1   programming, if available participate in a vocational program.
    That concludes the reading of the decision.

2

3   (Am. Answer, Ex. B1 at 38-41.)

4           After thorough review, this court cannot say that the Board's June 13, 2002

5   decision is "without support or otherwise arbitrary." Hill, 472 U.S. at 457.  First, and perhaps

6   most importantly, at the time of the June 13, 2002 parole suitability hearing, petitioner had not

7   yet served the minimum number of years required by his sentence.[3]  Pursuant to the holding in

8   Irons, petitioner's right to due process was not violated when he was deemed unsuitable for

9   parole prior to the expiration of his minimum term.  Irons, 505 F.3d at 665.  The facts in this case

10  are similar in many respects to those in Sass, where the petitioner was found unsuitable for parole

11  at his third suitability hearing, which was held prior to his service of the minimum term, based

12  solely on his commitment offense and prior criminal history.  As discussed above, in Sass the

13  Ninth Circuit concluded that in the context presented in that case these factors amounted to

14  "some evidence" to support the Board's determination.  Sass, 469 F.3d at 1129.  After a review of

15  the record in this case, and in accordance with the authorities discussed above, the court

16  concludes that the BPT's June 13, 2002 decision that petitioner was unsuitable for parole at that

17  time was supported by "some evidence" that bore "indicia of reliability." Jancsek, 833 F.2d at

18  1390.  Accordingly, the state court decision denying petitioner's due process claim is not contrary

19  to or an unreasonable application of federal law and may not be set aside.

20  /////

21  /////

22

23         [3]  Petitioner provides evidence that there was some confusion in the state court documents
    reflecting the length of his sentence.  (Supplemental Traverse, Attach. 2 to Exhibit A.)  It appears
24  that, due to clerical error, the original abstract of judgment failed to reflect the one year
    enhancement imposed on the murder charge (Count 1) and the five year consecutive sentence
25  imposed for the robbery conviction (Count 2).  (Id.)  However, on February 20, 1991, an
    amended abstract was issued reflecting that petitioner was sentenced on November 3, 1981 to a
26  total prison term of twenty-one years to life in prison.  (Amended Answer, Ex. A.)

## 2. July 11, 2003 Parole Suitability Hearing

At the July 11, 2003 parole suitability hearing, the Board gave the following reasons for finding petitioner unsuitable for parole:

Okay. Let the record show that all interested parties have returned to the room. Edward Willard, CDC number is C as in Charlie 38733. The Panel has reviewed all of the information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to the public safety, if released from prison at this time. Mr. Willard, this is a one year denial. The paramount reason would be the timing and the gravity of the committing offense. The offense was carried out in an especially brutal, vicious manner. The victim was stabbed multiple times and the offense was carried out in a dispassionate and calculated manner. The offense was carried out in a manner, which demonstrates an insensitive – an exceptionally insensitive disregard for human sufferings. And the motive for the crime was inexplicable and very trivial in relationship to the offense, in terms of robbery, greed, taking money. Wherein, the prisoner caused the demise of the victim. He was found lying on a concrete pillar in Venice, California, and he was deceased. The – he had 10 stab wounds, five of which were life threatening. Through the help of an informant, the prisoner confessed to killing the victim. The victim was a – was a visitor to this country. He was a Dutch citizen from Holland and was traveling on vacation using the Greyhound bus. He was befriended by the prisoner and the victim met an untimely demise. These conclusions are drawn from the Statement of Facts wherein (sic). Previous record, the prisoner has an escalating pattern of criminal conduct and violence. He has failed previous grants of probation and cannot be counted upon to avoid criminality. He has failed to profit from society's previous attempts to correct his criminality. In the – such attempts include, and this was in the Canadian justice system, of course, of probation and county jail time. Prior criminality which includes such crimes as breaking and entering, failure to report to a police station as ordered, failure to comply with conditions of – undertaken, theft of over 200 dollars, violation of Narcotics Control Act of Canada, criminal negligence and failure to appear. Of course, the instant offense, as well as he refused to appear to a court summons. Now, institutional behavior, the prisoner has not sufficiently participated in beneficial self-help and therapy at this time. Parole plans, the prisoner lacks a viable parole plan at this time. He does not have acceptable employment plans. The psychosocial – oh, strike that. The 3042 notices, the hearing Panel notes responses to 3042 notices indicate opposition to a finding of suitability. Specifically, the District Attorney's Office of Los Angeles County was present today in opposition. As well as the letter received June the 16th of 2003 from the Los Angeles Police

15

Department, which was the law enforcement agency which investigated the particular case, a Detective Michael DePasqual, spelled capital D-E capital P-A-S-Q-U-A-L, wrote in opposition to a finding of suitability of the prisoner today. Remarks, the Panel makes the following findings: That the prisoner still needs therapy in order to face, discuss, understand and cope with stress in a nondestructive manner. So that the prisoner can better understand the causative factors, what caused the prisoner to commit this atrocity on a – on a visitor, a visitor to this country. As well as, the prisoner was a visitor to this country, coming from Canada. And until progress is made, the prisoner continues to be unpredictable and a threat to others. Nevertheless, he should be commended. He's been disciplinary free since 1995. He's been an active participant since 1994, I believe, in AA, positive work reports in the culinary, he's on the waiting list for Welding. He achieved a certificate of – for Data Processing in – some time ago. As well as, he's made some efforts in terms of Computer Electronic – Electronics Repair. However, through no fault of his own, the program was discontinued. However, these positive aspects of his behavior don't outweigh the factors of unsuitability. As I said, this is a one-year denial. The recommendations to you are to remain disciplinary free. If it's available to you, continue to upgrade with – or participate, excuse me, in self-help programming to better understand, as I mentioned, the causative factors of this atrocity that was committed on a foreign citizen.

(Am. Answer, Ex. B2 at 37-41.)

In summary, it appears that the Board found petitioner unsuitable for parole in 2003 because: (1) petitioner's crime of conviction was carried out in a brutal and vicious manner, which demonstrated a disregard for human suffering; (2) petitioner had a previous record of escalating criminal conduct; (3) petitioner had not sufficiently participated in "beneficial self-help and therapy;" (4) petitioner did not have viable parole plans; and (5) the District Attorney's Office and the Los Angeles Police Department opposed his release on parole. This court finds that the latter three reasons relied upon by the Board to deny petitioner a parole date are improper or do not find support in the record. With regard to reason number three, listed above, the record reflects that petitioner has participated in numerous self-help and therapy programs in prison, has an outstanding work history, and has essentially participated in every self-help option available to him. (See Exhibits filed in support of petition (docket No. 2), Ex. G to Exhibit entitled "2003 parole hearing amended petition," & Ex. E.) Accordingly, the Board's conclusory statement that

16

1  petitioner "has not sufficiently participated in beneficial self-help and therapy at this time" does

2  not find any support in the record before this court.[4]

3          In reason number four, above, the Board found that petitioner had no viable parole

4  plans in the United States.  However, the record reflects that petitioner is a Canadian citizen and

5  has both a strong support group and parole plans in Canada, where he will most certainly be

6  deported to upon his release from prison in the United States.  (See Exhibits filed in support of

7  petition (docket No. 2), Ex. F to Exhibit entitled "2003 parole hearing amended petition," & Ex.

8  H.)  Cal. Code Regs. tit. 15 § 2402(d)(8) provides that a prisoner may be suitable for release if he

9  "has made realistic plans for release or has developed marketable skills that can be put to use

10 upon release."  As noted in a similar case, § 2402(d)(8) "does not require that a prisoner have

11 viable parole plans *in the United States*."  Martin v. Marshall, 431 F. Supp. 2d 1038, 1046 (N.D.

12 Cal. 2006) (emphasis in original).  Where an inmate will be deported upon his release from

13 prison, it is sufficient if he has parole plans in the country to which he will be deported.  Id.

14 Petitioner has adequate parole plans in Canada.  Accordingly, the Board's reliance on this factor

15 to deny petitioner a parole date finds no support in the record.

16         Finally, with respect to reason number 5, listed above, the Board noted that the

17 Los Angeles District Attorney and Los Angeles Police Department were not in favor of

18 petitioner's release on parole.  However, the opinion of the District Attorney and the Police

19 Department, standing alone, is not "some evidence" that would justify a denial of parole.  See

20 Hayward, 512 F.3d at 545 n.9 ("the district attorney's opinion, without more, cannot be

21 /////

22

23         [4]  After announcing its decision, the Board suggested to petitioner that he get "therapy"
   and participate in "self-help programming."  (Am. Answer, Ex. B2 at 40, 41.)  These suggestions
24 make no sense in light of the state court record.  Petitioner's 2003 psychological evaluation
   stated that "no further therapy is recommended."  (Exhibits filed in support of petition (docket
25 No. 2), Ex. B to exhibit entitled "2003 parole haring amended petition.")  Further, as explained
   above, it appears that petitioner has participated in every "self-help" program available at the
26 prison.

1   considered 'some evidence' . . . that supports the Governor's reversal of parole").  The court

2   finds the Board's use of this factor to justify its 2003 decision to be objectively unreasonable.

3          Notwithstanding the points addressed above, this court concludes that the Board's

4   2003 decision that petitioner was unsuitable for parole was supported by "some evidence" that

5   bore "indicia of reliability."  Jancsek, 833 F.2d at 1390.  Specifically, in denying petitioner a

6   parole date the panel based its decision in part on the fact that petitioner's commitment offense

7   was "carried out in an especially brutal manner," and that "the motive for the crime was

8   "inexplicable" and "trivial" in relation to the offense.  (Id. at 37-38.)  As set forth above, under

9   some circumstances the heinous or cruel nature of the commitment offense is a valid basis for an

10  unsuitability finding by the Board.  Cal. Code Regs. tit. 15 § 2402(c) (1).  This court

11  acknowledges that petitioner's commitment offense was carried out in a brutal manner for a

12  trivial reason, where he stabbed the victim approximately ten times for the purpose of robbery.

13  The Board further found that petitioner had an escalating pattern of criminal conduct and that he

14  had failed previous grants of probation.  (Am. Answer, Ex. B2 at 38.)  This factor, in

15  conjunction with the seriousness of the crime of conviction, may constitute "some evidence"

16  supporting the Board's decision to deny petitioner a parole date.  Sass, 469 F.3d at 1129.

17          The court also notes that this case does not involve the "unique circumstances"

18  present in the Hayward case.  Unlike the petitioner in Hayward, petitioner had just barely served

19  the minimum number of years in prison required by his sentence at the time of the 2003

20  suitability hearing.  In Hayward, the petitioner had served twenty-seven years in prison on a

21  sentence of fifteen years to life when the Governor reversed a favorable suitability decision.

22  Further, the Board has never recommended that the petitioner in this case receive a parole date.

23  In Hayward, the Board had twice recommended that the petitioner receive a parole date before

24  the Governor reversed those decisions and found him unsuitable for parole.  Finally, the

25  provocation for petitioner's crime was clearly trivial when compared to the provocation for the

26  crime committed by the petitioner in Hayward.  Because of these significant differences, the

<u>Hayward</u> decision does not dictate the granting of habeas relief at this time.  This case has not yet reached the point where a continued reliance on an unchanging factor such as the circumstances of the offense in denying parole has resulted in a due process violation.  Accordingly, petitioner is not entitled to relief on his claim that the Board's failure to find him suitable for parole at the July 11, 2003 parole suitability hearing violated his right to due process.  <u>Sass</u>, 461 F.3d at 1129; <u>Irons</u>, 505 F.3d at 664-65.

Although this court will not recommend that the instant petition be granted, the court emphasizes that petitioner has now been found unsuitable for parole on at least two occasions based only on the unchanging factors of the nature of his commitment offense and his criminal history in Canada.  He has now served over 26 years in prison on his sentence of 21 years to life.  Should petitioner be denied a parole date in the future based primarily on those unchanging factors or for other reasons that do not find support in the record, a due process challenge to that denial would have a substantial likelihood of success.[5]

---

[5]   Petitioner presents several miscellaneous claims throughout his petition.  For instance, petitioner contends that the Board's decision denying him a parole date has the effect of requiring him to serve a sentence that is longer than that prescribed for other inmates convicted of second degree murder in California.  In support of his claim in this regard, petitioner refers the court to California Code Regs. tit. 15 § 2403, which sets out a matrix of base terms for second degree murder ("the matrix").  Petitioner alleges the Board must ensure that his sentence falls within this matrix.  (Memorandum of Points and Authorities in Support of Petition (P&A) at 3-4.)  Petitioner also claims that California Penal Code § 3041 requires the Board to grant him a parole date because of its direction that one year prior to an inmate's minimum eligible parole date, a Board panel shall meet with the inmate and "shall normally" set a parole release date.  (<u>Id.</u> at 4, 8.)  Petitioner appears to be arguing that this provision required the Board to set his release date within the time limits provided by the matrix.  Further, petitioner argues that there are factors favoring his release on parole, including positive psychological evaluations, which outweigh the factors relied upon to deny him parole and that the BPT must therefore find him suitable for parole.  (<u>Id.</u> at 16-20.)  In addition, he argues that the Board's failure to find him suitable for parole violated various provisions of state law.  (<u>Id.</u> at 9-11.)  Many of petitioner's arguments based on state law have been rejected by the California Supreme Court in <u>In re Dannenberg</u>, 34 Cal. 4th 1061 (2005) (holding that the Board is not required to refer to its sentencing matrices or to compare other crimes of the same type in deciding whether a prisoner is suitable for parole).  More importantly for purposes of this federal habeas corpus action, petitioner has cited no federal authority for the proposition that the Due Process Clause requires a state parole board to either set a parole date where the board members believe a prisoner poses an unreasonable risk of danger to society, engage in a comparative analysis before denying parole suitability, or set a parole date within a state's "matrix."  In short, petitioner's arguments that the state court has

1            B.  Cruel and Unusual Punishment

2            Petitioner also claims that the length of his sentence, and particularly the Board's

3   failure to find him suitable for parole, violates the Eighth Amendment proscription against cruel

4   and unusual punishment.  (P&A at 21-27.)  Specifically, petitioner claims that the uncertain

5   nature of the length of his ultimate sentence causes him mental anguish and that the time he has

6   already served is not only disproportionate to his crime, but is comparable to a sentence imposed

7   for first degree murder.  (Id.; Supplemental Traverse at 2.)  He also argues that the Board has

8   improperly "defacto set petitioner's term at life."  (P&A at 21; Supplemental Traverse at 6-7.)

9            In  Lockyer v. Andrade, 538 U.S. 63 (2003), the United States Supreme Court

10  found that in addressing an Eighth Amendment challenge to a prison sentence, the "only relevant

11  clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework

12  is the gross disproportionality principle, the precise contours of which are unclear and applicable

13  only in the 'exceedingly rare' and 'extreme' case."  Id. at 73 (citing Harmelin v. Michigan, 501

14  U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 290 (1983); and Rummel v. Estelle, 445

15  U.S. 263, 272 (1980)).  The Supreme Court concluded that two consecutive twenty-five years to

16  life sentences with the possibility of parole, imposed under California's Three Strikes Law

17  following two petty theft convictions with priors, did not amount to cruel and unusual

18  punishment.  Andrade, 538 U.S. at 77; see also Ewing v. California, 538 U.S. 11 (2003) (holding

19  that a sentence of twenty-five years to life imposed for felony grand theft under California's

20  Three Strikes law did not violate the Eighth Amendment).

21  /////

22  /////

23

24  erred in applying state law in determining his release date are not cognizable in this federal
    habeas corpus proceeding.  Estelle, 502 U.S. at 67-68.  As discussed above, federal due process
25  requires only that the Board's decision be based on "some evidence" bearing "indicia of
    reliability."  Jancsek, 833 F.2d at 1390.  This is true even though there may be other factors
    favoring release.  The Board's decisions, reached at the parole suitability hearings in 2002 and
26  2003 that petitioner was unsuitable for parole, meet that minimally stringent test.

1      Following the decision in <u>Andrade</u> the United States Court of Appeals for the

2  Ninth Circuit has held that a third strike sentence of twenty-five years to life in prison for a third

3  shoplifting offense, a "wobbler" under state law[6], constituted cruel and unusual punishment.

4  <u>Ramirez v. Castro</u>, 365 F.3d 755 (9th Cir. 2004).  In so holding, the court relied upon the limited

5  and non-violent nature of the petitioner's prior criminal history and the fact that the petitioner's

6  only prior period of incarceration had been a single one-year jail sentence.  <u>Id.</u> at 768-69.

7  Thereafter, in <u>Rios v. Garcia</u>, 390 F.3d 1082 (9th Cir. 2004), the court distinguished the holding

8  in <u>Ramirez</u> from the situation it confronted, finding that the petitioner in <u>Rios</u> had a "lengthy

9  criminal history," had "been incarcerated several times," and that the prior strikes used to

10  enhance his sentence had "involved the threat of violence."  <u>Id.</u> at 1086.

11      This court finds that in this case petitioner's sentence does not fall within the type

12  of "exceedingly rare" circumstance that would support a finding that his sentence violates the

13  Eighth Amendment.  Petitioner was convicted of the deliberate murder and robbery of a Dutch

14  tourist.  In view of the decisions noted above, petitioner's sentence of twenty-one years to life is

15  not grossly disproportionate to these crimes.  <u>See</u> <u>Harmelin</u>, 501 U.S. at 1004-05 (life

16  imprisonment without possibility of parole for possession of 24 ounces of cocaine raises no

17  inference of gross disproportionality).  The state courts' rejection of petitioner's Eighth

18  Amendment claim was neither contrary to, nor an unreasonable application of clearly established

19  federal law.  Therefore, petitioner is not entitled to relief on his Eighth Amendment claim.

20          C.  <u>Breach of Plea Agreement</u>

21      Petitioner next claims that the BPT's failure to find him suitable for parole and its

22  refusal to set a release date has resulted in a breach of his plea agreement.  (P&A at 28.)

23  Petitioner states that he understood when he entered into his plea agreement that "parole would

24  be granted after serving the required number of years."  (<u>Id.</u>)  Petitioner explains:

25  _____

26      [6] A "wobbler" is an offense that can be punished as either a misdemeanor or a felony
under applicable law.  <u>See</u> <u>Ferreira v. Ashcroft</u>, 382 F.3d 1045, 1051 (9th Cir. 2004).

1       At the time of accepting this plea, based upon all available
2   information, petitioner expected that if he made efforts toward
reforming himself, demonstrated a sincere appreciation of the
3   wrongfulness of the crime, learned marketable skills, and reduced
his classification score from 100 to 0, a parole board
4   conscientiously exercising its discretion would set a parole release
date.  Otherwise there would be no benefit for petitioner in
5   pleading.  The BPT's continued denial of parole and refusal to set a
primary term for petitioner's sentence has imposed an
6   impermissible effect on his plea.  It has deprived petitioner of the
very basis for that bargain.

7   (Id. at 29.)  Petitioner also argues that, at the time he entered into the plea agreement, "there was

8   not a no parole policy."  (Supplemental Traverse at 13.)  He states, "if petitioner had been

9   advised in 1981 that the Government would rig the system to eliminate parole release, petitioner

10  would not have entered into the plea agreement."  (Id.)  Respondent counters that there is no

11  evidence before this court that the trial court or the prosecutor promised petitioner a grant of

12  parole after a certain period of incarceration.  (Am. Answer at 14.)

13      Plea agreements are contractual in nature and are construed using the ordinary

14  rules of contract interpretation.  United States v. Transfiguracion, 442 F.3d 1222, 1228 (9th Cir.

15  2006); Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003).  Courts will enforce the literal

16  terms of the plea agreement but must construe any ambiguities against the government.  United

17  States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002).  "[W]hen a plea rests in any

18  significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part

19  of the inducement or consideration, such promise must be fulfilled."  Santobello v. New York,

20  404 U.S. 257, 262 (1971).  In construing a plea agreement, this court must determine what

21  petitioner reasonably believed to be its terms at the time of the plea.  United States v. Anderson,

22  970 F.2d 602, 607 (9th Cir. 1992), as amended, 990 F.2d 1163 (9th Cir. 1993).

23      Petitioner has failed to demonstrate that the Board's decisions finding him

24  unsuitable for parole violated the terms of his plea agreement.  Petitioner states that he believed

25  he would be "eligible for parole after 15 years (plus the determinate terms.)"  (Pet. at 29.)

26  However, there is nothing in the record which reflects a promise by the prosecutor that petitioner

1  would be released or granted parole at any particular time or before the expiration of the life

2  term.  Indeed, petitioner's former attorney recalls that petitioner was informed he would be

3  eligible for release on parole "at the discretion of the Board of Prison Terms."  (Supplemental

4  Traverse, Ex. F.)[7]

5          This court may not grant habeas relief based upon petitioner's unsupported belief

6  that he would be released at a time certain.  The decision of the state courts rejecting petitioner's

7  claim in this regard is not contrary to or an unreasonable application of federal law as set forth

8  above, nor is it based on an unreasonable determination of the facts of this case.  Accordingly,

9  petitioner is not entitled to relief on this claim.

10         D.  No Parole Policy

11         Petitioner claims that he was denied parole as a result of the Board's application

12  of "a policy of no parole for lifers at the time of the challenged hearings, a violation of

13  petitioner's Constitutional rights."  (P&A at 31.)  In support of this claim, petitioner has offered

14  argument and documentary evidence to show that invalid parole policies and practices existed

15  under former California Governor Gray Davis.  (Id. at 31-37; Supplemental Traverse, Ex. A,

16  Attach. 1, & second Ex. A.)

17         The parole denials challenged in this case occurred when Gray Davis was

18  Governor of California.  The evidence submitted by petitioner demonstrates that former

19  Governor Davis vetoed parole recommendations for virtually every prisoner convicted of murder,

20  with rare exceptions.  The Ninth Circuit Court of Appeal has acknowledged that California

21  inmates have a due process right to parole consideration by neutral decision-makers.  See

22  O'Bremski v. Maas, 915 F.2d 418, 422 (9th Cir. 1990) (an inmate is "entitled to have his release

23  date considered by a Board that [is] free from bias or prejudice").  Accordingly, parole board

24  ────────────────

25     [7]  In his January 28, 2005 traverse, petitioner informs the court that during the sentencing
proceedings a discussion was held off the record in which he was "assured that [he] would be
eligible for parole and released at or near [his] MEPD."  (Traverse at 20.)  However, there is no

26  evidence of such an unreported discussion in the record before this court.

1   officials owe a duty to potential parolees "to render impartial decisions in cases and controversies

2   that excite strong feelings because the litigant's liberty is at stake." Id. (quoting Sellars v.

3   Procunier, 641 F.2d 1295, 1303 (9th Cir. 1981).  Indeed, "a fair trial in a fair tribunal is a basic

4   requirement of due process."  In re Murchison, 349 U.S. 133, 136 (1955).

5          Based on the authorities cited above, petitioner is correct that he was entitled to

6   have his release date considered by a parole board that was free of bias or prejudice.  However,

7   even assuming arguendo that petitioner was found unsuitable for parole based on a "no parole"

8   policy for life prisoners, petitioner has failed to show prejudice.  Respondent has submitted

9   evidence that petitioner has had three parole hearings since July 11, 2003, on October 21, 2004,

10  November 2, 2006, and December 9, 2007.  (Respondent's Response to Court's January 10, 2008

11  Order & Exs. A & B.)  Petitioner was found unsuitable for parole at all of these hearings.  (Id.)

12  Gray Davis was not the Governor of California at the time of these subsequent hearings and

13  petitioner has not established, or alleged, that the Board was operating under a no-parole policy

14  for life prisoners after Governor Davis left office.  Therefore, petitioner has already received all

15  the relief to which he would be entitled with respect to this claim: a new parole hearing before an

16  unbiased Board panel.  Under these circumstances, petitioner has failed to establish that the

17  outcome of a new suitability hearing would have changed before a different panel.  Accordingly,

18  petitioner is not entitled to relief on this claim.  See O'Bremski, 915 F.2d at 423 (parolee failed to

19  establish prejudice where a neutral parole panel at a new hearing would reach the same outcome).

20  III.  Requests for Judicial Notice

21          In his supplemental traverse filed on November 14, 2005, petitioner requests that

22  this court take judicial notice of: (1) the findings and recommendations issued by former United

23  States Magistrate Judge Peter Nowinski in Coleman v. Board of Prison Terms, et al., Case No.

24  CIV S-96-0783 LKK PAN P, in which the Magistrate Judge recommended that the habeas

25  petition be granted because a blanket police of no parole for murderers at the time of the

26  petitioner's 1995 parole hearing during the administration of former Governor Pete Wilson

prevented the petitioner from obtaining a fair parole suitability determination; (2) the unreported decision of District Judge Edward Rafeedie of the Central District of California in <u>Masoner v. California</u>, No. CIV 03-1261-ER, 2004 WL 1080177 (C.D. Cal. Jan. 23, 2004), granting a habeas petition upon a finding that repeated refusals by the BPT to grant a parole date to the petitioner, who had an exemplary record, violated his due process rights; and (3) an amicus curiae brief filed in the California Court of Appeal for the First Appellate District in <u>In re Scott</u>, Case No. A108894, challenging Governor Schwarzenegger's reversal of a grant of parole to petitioner Scott.

On April 13, 2006, petitioner filed a request that this court take judicial notice of the March 16, 2006 order of the United States District Court for the Central District of California in <u>Kunkler v. Muntz</u>, Case No. CV 05-6473 TJH (E), in which the court granted the petitioner's habeas petition on the grounds that the reversals by Governors Gray Davis and Arnold Schwarzenegger of two grants of parole by the BPT, based solely on the petitioner's crime and past criminal history, violated the due process clause.

On July 17, 2006, petitioner filed a request that this court take judicial notice of the decision of the United States District Court for the Northen District of California in <u>Martin v. Marshall</u>, Case No. C 05-3486 MHP, in which the court determined that the reversal by former Governor Gray Davis of a grant of parole by the BPT violated the petitioner's right to due process because it was based only on unchanging factors and may have been based on an illegal "no parole" policy for murderers.

Finally, on March 20, 2007, petitioner filed a request that this court take judicial notice of the information submitted by the respondents in <u>Mayfield v. Carey</u>, Case No. CIV S-06-0077 FCD EFB P, in response to the petitioner's motion for discovery.  A review of the court record in that case reflects that the information in question concerns statistics reflecting the number of California prisoners granted parole who chose not to discuss their crime of conviction at parole suitability hearings.  <u>See</u> Case No. CIV S-06-0077 FCD EFB P, docket No. 26.

Petitioner's requests for judicial notice will be granted.  This court has read and considered the decisions and documents described above in connection with these findings and recommendations.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Petitioner's request for judicial notice contained in his November 14, 2005 supplemental traverse is granted;

2.  Petitioner's April 13, 2006 request for judicial notice is granted;

3.  Petitioner's July 17, 2006 request for judicial notice is granted; and

4.  Petitioner's March 20, 2007 request for judicial notice is granted.

IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 9, 2008.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
willard743.hc